May it please the Court, good morning. My name is Michael Burke, and I represent Mr. Perez-Rodriguez. I will attempt to reserve two minutes of my time for rebuttal, and will keep track of my time. Mr. Perez is asking that this Court vacate the 15-month sentences imposed by the district court for his convictions for making false statements in connection with the purchase of the firearm. And he is asking that the Court remand for resentencing. Remand is appropriate in this case for at least two reasons. First, the district court committed procedural plain error in this case by failing to identify the appropriate guideline range at the beginning of the sentencing or at any point during the sentencing. Sotomayor, did you think it was somewhat clear to all the participants what the guideline range was? Your Honor, I think it depends on how you define participants. I do not – I believe that the government and defense counsel may, at that point, have thought that the guideline range was 12. There had been a previous pre-sentence report that set the guideline range at 14. Based on statements that the probation officer took to mean that Mr. Perez had transferred – purchased the weapons knowing they would be transferred to a prohibited person. The government indicated that it was not going to pursue that enhancement, but said it could be found, we just don't want to defend it on appeal. On the March 17th hearing, the district court judge said, I'm not sure I agree with you on that. And left it at that, and did not return to the issue. So when we're at sentencing in April, the district court never returns to that issue. And we never know, even at the end of sentencing, if the district court changed its mind on that point. Well, if defense counsel thought there was a risk of that, wouldn't you have expected defense counsel to say something about that issue? And nothing was said about that issue. You're right, Your Honor. Nothing was. So who was confused? Who didn't know what the operative offense level was, but for the issue that was discussed? It seems to me everybody in the room understood what was being discussed, and what ultimately happened was consistent with what everybody in the room understood. First, Your Honor, that's why we're presenting this as an issue of plain error, obviously. But this Court's ruling in Cardi and the Supreme Court's ruling in Gall make it clear that the district court must identify. But for plain error, you have to have an impact. You have to have some prejudice. And if everybody in the room knew what it was, and it turned out it was what everybody in the room thought, what possible impact was there? First, in this Court's decision to do so. None. Isn't that the answer to my question? Answer my question first. What possible impact was there? The possible impact, Your Honor, is that the district court judge imposed a sentence of 15 months, saying I'm following the district court's – I'm following the probation officer's suggestion. The first probation report that was prepared that had a guideline range of 18 to 20 – that had a guideline range of 24 to 30 months, suggested a 15-month sentence. But is there any reason to think that that's what the judge was referring to when there was a later report? Your Honor, every question that the Court is asking me requires supposition on our part. And that is something that is not appropriate. Not plain error. If it's purely supposition, if there's no prejudice, it's not plain error. I disagree, Your Honor. I think this Court's – Then you better tell me what the impact is, because it seems to me that's what the piece is missing. Well, I would also say that I don't necessarily, and I don't mean to be – No, I – you've got the cards, you're dealt. You're trying to play the best that you can, the best you can. But unless there's – I mean, plain error requires more than error. Among the things it requires is impact. Not always, Your Honor. And that is why I referenced this Court's decisions in WAC 9 and Hammonds. In WAC 9, this Court said that that requirement, the requirement of identifying the appropriate rate – Are the facts of this case at all remotely close to the facts of that case? There were – yes, Your Honor. There were cases in which the district court did not identify the appropriate guideline range. But the plain error standard requires that you show an effect on your client's substantial rights. Are you saying you think you have a case that says that's not part of the plain error standard? I don't understand why you think you can avoid telling us what the impact was on his substantial rights. Because WAC 9, Your Honor, says that there is an exception when the error committed by the district court is so flagrant that it is not required for the defendant to show that there is an exception. And you think it's a flagrant error to refer to a probation report that was the most recent probation report and use what the range was there instead of – I mean, that's not the kind of error that was at issue in WAC 9. The error that we are arguing, Your Honor, is the failure to even identify the range. But obviously, if the Court would allow me, I will move on to the next issue. By the next issue. That may be more persuasive for the Court. Good call. That concerns the four-level enhancement that was disputed, that was discussed, and that did have a substantial impact on Mr. Perez's sentences. In this case, the government, the probation office and the government argued in favor of a four-level enhancement because the weapons that Mr. Perez purchased were transferred to Mexico. The only evidence in this case that the weapons were transferred to Mexico were Mr. Perez's own statements, and those statements were made after a – Mr. Perez was given inadequate Miranda warnings at the interrogation at the border. Well, he was given warnings. The problem is, was the warnings – were the warnings effectively taken back. But I think the problem may be the district court explicitly found the statement to be voluntary, and that finding is not challenged on appeal. So why should we be concerned? Well, Your Honor, because we – the question is – it's difficult when you talk about voluntariness of waiver of Miranda and voluntariness of the confession, and I believe the Supreme Court says there's never been a case where you might have an involuntary waiver but a voluntary confession. It's a very – our argument is that his waiver of his Miranda rights was involuntary. Do you think he was forced, though? I mean, it seems like your arguments go more to whether it was knowing than whether it was voluntary. No, Your Honor. I believe that, well, knowing would go to – knowing and intelligent would go to whether the – as I understand it, whether the warnings were adequately described to him. He was given a form to read, and Mr. Perez can read, and he initialed them. But there's a case that we cite in our brief called Giddens from the Fourth Circuit last summer, which is very closely on point, where a defendant asks the law enforcement officer who's interrogating him, am I in trouble? And the response is, no, you're not in trouble. That is coercion. That is intended to mislead the defendant and, as a result, results in an involuntary waiver. But in Giddens, the police made it seem like he couldn't have his car back if he didn't answer the questions. We don't have anything like that here, do we? Do we have any – any coercion or implication that he can't leave? I mean, you're not making arguments like that. You're making arguments that they said things that were confusing. But that seems to go more to knowing and intelligent. Your Honor, I disagree that they were confusing. They were misleading. And, yes, in the Giddens case, there were two different issues. There was the issue of whether he could have his car back. But they were addressed separately, Your Honor. They were separate issues, and they both combined, you know, supported the Court's decision. But there's nothing to indicate that the Court found that the openly misleading statement made by the law enforcement officer, the same statement made here, wasn't the reason that they found the Miranda waiver to be involuntary. If the Court would allow me, I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court. My name is Brandon Brown, and I'm an assistant U.S. attorney from the District of Arizona. In this case, the Court correctly considered the defendant's statement that he transported guns to Mexico when determining his offense level for the crimes that he committed. When sentencing a defendant, the Court starts from the proposition that it is required to consider all relevant conduct when it is setting an offense level. The exception to that is when there is a blatant illegality compounding an already well-established charge, and that's the circumstance in which the Court would disregard a statement for sentencing. But those situations are not present in this case. In terms of whether or not the charge was well substantiated at the time that the agents interviewed the defendant, they had 4473 forms that appeared to have been filled out by the defendant and a statement from a resident at that address saying that the defendant didn't live there and they didn't know the defendant. However, agents had not confirmed that it was the defendant who had filled out those 4473 forms. And as well the ---- So are you still arguing that there was no probable cause? We ---- our position as to probable cause is that the agents weren't sure at the outset. We're not saying that there wasn't probable cause, but that it was close and reasonable minds can differ at that time. Specifically, in terms of ---- Because you needed to have probable cause to detain him, right? At the ---- in the context of a border stop, when somebody is entering the United States, that's not something that we briefed, and I'd be happy to address that in supplemental briefing if the Court would like us to address that, but it's going to be a much lower standard in terms of stop and seizure, and usually, in terms of detention, we're talking about R.S. to detain, and then ---- But he was detained for two hours before he was questioned, right? Correct. So you're not arguing that wasn't a detention, are you? I'm not arguing that that was ---- It seems like this argument that you didn't have probable cause is a very odd thing for you to be arguing. Well, that's not really our argument. What our argument is is that there wasn't, going back to the standard, that there wasn't a well-substantiated charge. That's the standard that we're dealing with. We're not dealing with a standard of probable cause. That was something that was picked up on, I guess, in the defendant's reply brief. But our position was that the charge is not well-substantiated, considering the evidence that the agents had before them, and also considering that agents later found out that the resident at that address had been dishonest with them about portions of the statement. They found out that they knew the defendant as well as his father, because when the defendant was in high school and living in Mexico, the defendant's father paid that resident, or the resident at the address, to use the address so he could attend high school in the United States. And that's the point in terms of it's not so clear-cut. So if there was no probable cause, then was it a constitutional interrogation? Your Honor, we believe it was a constitutional interrogation. But the issue, again, in this case is not whether or not there was probable cause. It's whether or not there was a well-substantiated or a well-corroborated charge. And that was not present at that time. Probable cause is going to be different as to whether or not the charge is well-substantiated. What's your case law for this well-substantiated, this other standard you're articulating? Why is that a relevant standard? That's in United States v. Kim. I cited it in my brief at page 28, and specifically within that case at 1435. That's when they're going through the progression of Verdugo. I guess Verdugo and Kim. It talks about Vandermark, where they refined the standard that was set out in Verdugo and talked about how it only applies to blatant illegalities committed in pursuit of compounding an already well-substantiated charge. As to whether or not there was a valid waiver of the Miranda rights, the defendant was read his Miranda rights from a form. He was a college student who was studying criminal justice. He initialed next to each and every right that he was giving up, and he signed the form stating that he was willing to speak with the law enforcement officers and did so. There were statements made about, I guess, whether or not it was a formality. And I'll submit to the Court that that statement is not perfect, but it is also not a statement that misrepresents the significance or invalidates the Miranda warnings. And the Court made a similar finding in United States v. Holmes, where officers referred to Miranda rights as a technicality. And there the Court specifically made the finding that referring to Miranda rights as a technicality did not misrepresent their significance. What about in combination with telling him that he's not in trouble? So they say you're not in trouble, this is just a formality. I mean, aren't they basically telling him he's not really waiving anything by signing this form, by making those statements? No, Your Honor. And in terms of the not true. But what was the point of making those statements? The point of making those statements, well, when they asked him whether or not he was in trouble, the agents, they've got to give an answer. Their answer was not perfect. But their statement is, I guess, in considering the evidence they had, there were a number of things that could have happened during that statement where we find out that he actually does live at that address, the residents are lying, and there's no charge to be had in terms of the 4473. So it really does remain to be seen whether or not he's in trouble at that time. And when you consider both of those statements, when you compare it to the defendant's characteristics, the fact that he was studying criminal justice in the totality of the circumstances, those two statements don't negate his waiver of his Miranda rights that he gave on that written form. Well, most suspects you arrest based on probable cause. That's a standard deliberately lower than what we would need to prove up to obtain a conviction at trial. But your argument seems to suggest so anytime a police officer arrests a suspect, the police officer can give the Miranda warnings and then immediately try to dissipate the warnings because it may be that there's not going to be enough evidence to establish proof beyond a reasonable doubt. So it may be that the prosecutor won't go on or for some reason, even if it goes to trial, they don't obtain a conviction. But to answer the question, am I in trouble, or to suggest that, no, nothing's going to happen to you, seems to be well short of conveying to the person in custody of what the actual state of affairs is. And I can only see the point of that statement as being intended to dissipate the impact of the warnings. Is there something I'm missing? Well, if you look at the agent's statement later on in the interview after the defendant admitted that he was the one who had filled out the 4473 forms and had some additional information, when the defendant asked again, you know, am I in trouble, the agent said, well, yes, you have admitted that you've committed a crime. And at that point, it was clear that he was in trouble. It was likely that he was going to be charged. It's too late for the warning then, though, isn't it? I mean, that suggests that something happened in between, so the agent gives a different answer than he'd given before. Because at that time, he knew. But at the outset of the interview when he gave that statement that he was not in trouble, while it wasn't a perfect statement, I don't think it was intended to misrepresent the facts to the defendant. But they had probable cause to arrest him, right? I think reasonable minds can differ as to whether there was probable cause. But it was close. I think that some judges presented with these facts would issue a warrant based on those facts. Others would say we need some more information. Have you talked to the defendant? So are you relying, then, on this being at the border? I mean, it now sounds like you really are putting all the weight in the fact that somehow he didn't they didn't need probable cause to arrest him. Well, I think arrest is going to be different, and that's not something that was asserted by the defense. We're not talking about de novo review of a Fourth Amendment issue or de novo review of a Fifth Amendment issue. We're talking about whether or not it can be considered for the purpose of sentencing. The defendant didn't challenge this prior to pleading guilty. And that was based on their position that there was enough to convict him without the statement. They only charged they only challenged the admission of the statement at sentencing because they didn't want it considered for the enhancement. But you don't think it matters whether it was a proper interrogation when we ask that when we try to answer that question? It matters, but that's not an issue. It matters, and I believe that it was a proper interrogation, but that's not something that the defendant had objected to or is before the court right now in terms of de novo review as to that those constitutional issues. If there are no further questions, I'd ask the court to affirm. Mr. Brown stated at Mr. Perez's sentence, this is a defendant who is in custody at the port who has been held for questioning by ATF agents. This is not a situation where Border Patrol is just talking to somebody at primary inspection or referred to them to secondary inspection.  This is a situation where somebody has been detained and held for questioning. The government is now saying, well, there may not be probable cause in this case. Those are completely contradictory arguments, and we submit that if that is the government's position, the district court should be allowed in the first instance to decide whether to enhance Mr. Perez's sentence. Now, this is a difficult thing for defense counsels to do. Kennedy, but the district court did not know at the time that the government was that there was no probable cause to arrest Mr. Perez, and there is no question that he was. So how does that impact the factors as to whether the sentence should be enhanced? Well, Your Honor, and to make my argument clear, I apologize. It doesn't affect the enhancement. It does affect the district court's discretion to impose a sentence. A district court can take into consideration the government's actions in a case in which there is no probable cause to arrest Mr. Perez, and there is no question that the district court should be allowed in the first instance to decide whether to enhance Mr. Perez's sentence. So I'm not sure that the district court should be allowed in the first instance   to decide whether or not to enhance Mr. Perez's sentence.    Mr. Boutrous, I would like to know the evidence upon which the gun's enhancement was based, but what discretionary element? I'm just missing something, I think. And, Your Honor, I'm over my time. If I may answer. I understand that. I've taken you there. Okay. There was probable cause to arrest and detain Mr. Perez. Now, this may be a first. I'm taking my time to do it. I admit that. There was a judgmental. You've got the government suggesting no probable cause. Okay. Stop the presses. There was. Man bites dog. Okay. Here we are. Our argument was that there was, in fact, substantial evidence enough that they actually they knew that they could get a conviction in this case. The probable cause issue was an entirely new issue. We never challenged it because we didn't believe that that was the case. But now we have a case where the government is asserting that it didn't have probable cause or maybe it didn't have probable cause, and that is something that the district court should be able to know when it decides what the sentence should be for Mr. Perez. Thank you. Thank you. The case is submitted.
judges: Clifton, Friedland, Gleason